UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASHOK K. LALWANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01905-JRO-CSW |
| | ) | |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) | |
| LOPO REGO, | ) | |
| ANGIE RAYMOND, | ) | |
| RAHUL SHRIVASTAV, | ) | |
| DAN LI, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>ORDER ON DISCOVERY DISPUTE CONCERNING THREE EMAILS</u>

This matter is before the Court following the Parties' telephonic Discovery Dispute Conference on May 6, 2026 ("the Conference").  (Dkt. 104).  At the Conference, the Parties discussed the extent to which three (3) emails were discoverable, privileged, and relevant.  The Parties were then granted leave to file additional briefing regarding the dispute.

The Parties filed their Briefs on June 2, 2026.  (Dkts. 118; 120).  On June 8, 2026, a telephonic Status Conference was held, where the Parties further discussed the dispute.  (Dkt. 124).  Having reviewed the Parties' submissions, relevant case law, and oral arguments provided to the Court, this Order follows.

### I.    BACKGROUND

This is an employment discrimination case with a history of discovery disputes requiring Court intervention.  The instant dispute involves three (3) emails stored on Plaintiff Lalwani's University email account ("Emails"[1]).  The Emails

---

[1] The following at-issue documents are collectively included and identified herein as "Emails": Email string re: Appointment with DFS and attachments (607161, 647327, 647329, 647334, 647335,

were neither produced by Lalwani during discovery nor inadvertently disclosed by Lalwani. Instead, the University Defendants discovered the Emails when searching their server for documents. Upon finding the Emails to be between Lalwani and lawyers, the University Defendants identified the Emails, notified Plaintiff, limited their review, and sequestered the Emails. (Dkt. 120 at 2).

In communications between the Parties after the notification, The University Defendants argued the Emails are discoverable, because Lalwani waived any applicable privilege. Specifically, the University Defendants contend Lalwani cannot assert attorney-client privilege over communications stored on the university server. The University Defendants also note that Lalwani's failure to produce a privilege log, despite his knowledge that he had used his email account to communicate with lawyers, is fatal to his objections. The University Defendants note Lalwani has had uninterrupted and ongoing access to his email account – before litigation, throughout, and even to present day – where these communications were found, yet they were never identified by Lalwani in response to their discovery requests propounded on him or identified in any privilege log.

In response, Lalwani contends the Emails are protected under the Quick Peek Order (Dkt. 84 at 2), are outside the five-year timeframe for responsive documents as outlined in this Court's March 4 Order (Dkt. 83 at 15), and also are protected by both the work product doctrine and the attorney-client privilege.

## II.    LEGAL STANDARD

The scope of permissible discovery is governed by Fed. R. Civ. P. 26(b)(1). Specifically, Federal Rule of Civil Procedure 26(b)(1) provides that civil litigants are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Evidence need not be admissible to be discoverable. *West v. Wilco Life Ins. Co.*, 2023 WL 2917059, at *4 (S.D. Ind. Apr. 12, 2023) (citation omitted). Courts have broad discretion in

---

647335, 647339); Email string re: Favor.msg (607253); and Email string re: Intake-In-GJX-RPM.msg and attachments (749778, 1108733, 1108736).

resolving discovery disputes. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating and Air-Conditioning Eng'rs.*, Inc., 755 F.3d 832, 837 (7th Cir. 2014); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

### III.   DISCUSSION

The dispute teed up for the Court here is not just whether these subject Emails are shielded from discovery by any privilege.  In addition, Lalwani seeks an Order from the Court deeming the subject Emails privileged communications, as well as a directive to the University Defendants to "immediately return and destroy every document they retrieved from Dr. Lalwani's IU custodian account." (Dkt. 118 at 5).  Lalwani also seeks an Order requiring the University Defendants' access to all of his communications to "proceed through formal Rule 34 process" and requiring the University Defendants to "provide a sworn declaration disclosing all search terms used, all individuals who reviewed the documents, and all ways derived information has influenced litigation strategy." (*Id.*).Finally, Lalwani also seeks sanctions under Federal Rule of Civil Procedure 37(b)(2).

The University Defendants request that the Court "review the contested communications *in camera* and confirm which of the communications, if any, are privileged," and enter an "order finding that Defendants are entitled to review and use non-privileged, contested communications and attachments." (Dkt. 120 at 6).

The Undersigned completed an *in camera* review of the Emails and considered each of the claimed privileges and requests for relief.

### A.  ARGUMENTS
#### i.  QUICK PEEK ORDER

Lalwani contends the Emails are protected by the Waiver Protection provision of the Quick Peek Order. (Dkt. 118 at 2; Dkt.84 at 2).  The University Defendants respond that the Emails were not subject to the Quick Peek Order and note "the documents in question were not inadvertently disclosed – they were on IU's servers and within IU's possession, custody, and control." (Dkt. 120 at 4).

The Quick Peek Order provides that "[a] document's disclosure as part of a Preliminary Production under the Agreement does not constitute a waiver of any privilege. Pursuant to [Federal Rule of Evidence] 502(d), this waiver protection extends to all state and federal proceedings." (Dkt. 84 at 2).

Lalwani's argument for protection under the Quick Peek Order is misplaced. This is not a case where privilege was waived by an inadvertent disclosure in documents produced under the Quick Peek Order. *See Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 647–48 (S.D. Ind. 2000) (discussing the inadvertent disclosure of a privileged communication).

As stated in the Quick Peek Order, the waiver protection applies only to documents disclosed as part of a Preliminary Production. (Dkt. 84 at 2). This Court's March 4 Order explained the purpose of the Quick Peek Order, noting that the Order was intended to address the Parties' dispute over the proper ESI search protocol and "cull responsive documents of privileged and confidential information." (Dkt. 83 at 13–14). Nothing in the Order was intended to apply to documents outside of a Preliminary Production, nor to override the Parties' abilities to independently investigate and develop their cases. The Emails at issue were not part of a Preliminary Production. Accordingly, the Emails are not protected by the Quick Peek Order's Waiver Protection provision.

### ii.   THE MARCH 4 ORDER

Lalwani further contends the Emails are protected by the five-year timeframe for responsive documents as outlined in this Court's Order of March 4. (Dkt. 83 at 15; Dkt. 118 at 3. This argument, too, is misplaced. The Court's Order set a five-year timeframe for documents responsive to discovery requests. (Dkt. 83 at 15). The temporal scope limitation was a ruling necessitated by a dispute over Lalwani's initial request for an overbroad (fourteen-year) general discovery timeframe. (*Id.* at 12). In finding that the timeframe was "unnecessarily long and unjustified for this employment discrimination case," the Order established the five-year timeframe "for documents produced *in response to this Order*." (*Id.*) (emphasis

added).  As outlined above, the Emails were not produced as part of a Preliminary Production.  The Emails were — at all times —created and stored on the University Defendant's servers and within the University Defendants' possession, custody, and control.  It necessarily follows that the temporal scope limitation does not apply to the Emails.

### iii.    THE WORK PRODUCT DOCTRINE

Lalwani also argues the work product doctrine protects the Emails, because the Emails were prepared in anticipation of litigation.  (Dkt. 118 at 5).  The "work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  To establish work-product protection, "the discovery opponent must show that 'the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.'" *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1368 (N.D. Ill. 1995) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983)).  Critically, "[t]he work-product doctrine does not extend to every communication by an attorney that may concern litigation in some way. The communication must be made as part of the adversary process."  (*Id.*) Additionally, "[w]ork-product protection does not come into play 'merely because there is a remote prospect of future litigation.'" *Hankins v. Alpha Kappa Alpha Sorority, Inc.,* 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021), (quoting *Binks* at 1118).

The Undersigned performed an *in camera* review of the Emails and determined that the Emails are not communications prepared by attorneys in anticipation of this litigation or made as part of the adversary process.  Instead, the Emails are Lalwani's own communications and concern a non-party to this case and factual events distinct from the Lalwani's employment, i.e., of an entirely different subject matter than the present case.  *See Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309, n. 3 (D.N.J. 2008) (explaining that the work-product privilege extends to different cases only "so long as the two cases are closely

related in parties or subject matter.")  There has been no showing that the personal legal matter that is the subject matter of the Emails is so closely related to this litigation to trigger work product protection.  Therefore, the Emails are also not protected by the work product doctrine.

### iv.    ATTORNEY-CLIENT PRIVILEGE

Lalwani contends the Emails are also protected under the attorney-client privilege.  Of all the arguments Lalwani lodged in opposition to the Emails, this argument is the one that comes closest to the mark.  However, some courts in our circuit have faced similar circumstances and already provided instructive analysis of the same arguments advanced here.

Because a claim of privilege has the effect of withholding relevant information, the attorney-client privilege is construed to apply only where necessary to achieve its purpose.  "That purpose is to foster free and open communication between a party and his lawyer regarding legal advice."  *Goldstein v. Colborne Acquisition Co., LLC*, 873 F. Supp. 2d 932, 934 (N.D. Ill. 2012).  The privilege can be waived, however, in circumstances where the client can have no reasonable expectation of privacy in the communications.

Although privacy concerns may be relevant, a person's expectation that his communications be maintained as private is not a legitimate basis for shielding those communications from discovery.  *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010).   Key to analysis of the treatment of the Emails here is whether a reasonable expectation of privacy can exist for emails transmitted on the university's server.

Lalwani relies upon *Cho v. DePaul University*, 2020 WL 2526486, (N.D. Ill., May 17, 2020), which afforded attorney-client privilege to a DePaul University professor's emails sent to her personal counsel through her DePaul email account. *Id*. at *1-2.  The University Defendants distinguish the *Cho* case and argue that *Bridges v. City of Milwaukee*, 2024 WL 4707405, (E.D. Wis. Nov. 7, 2024) controls.  In *Bridges*, the court found that a state government employee had no reasonable

expectation of privacy when she used her work email to communicate with her attorney.  *Id*. at *3.  The analysis provided in both *Cho* and *Bridges* – read together – resolves this Email dispute.

While *Cho* discussed attorney-client privilege in the context of a university employee's personal use of her email account, *Cho* is otherwise distinguishable from this case.  Indiana University, unlike DePaul University, is a public institution subject to an open records act.  *Cho* at *2.  The *Bridges* court discussed the state's open records law as a factor that supported waiver of the privilege.  Specifically, the court explained that the law "'shall be construed in every instance with a presumption of complete public access.'" *Bridges* at *4, (quoting *Lakeland Times v. Lakeland Union High Sch.,* 2014 WL 4548127 at *4 (Wis. Ct. App. Sept. 16, 2014)).

Similarly, in this case, the "core principle" of Indiana's Access to Public Records Act, I.C. §5-14-3, "is that 'all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees.'" *Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (quoting I.C. §5-14-3-1).

A review of the university policy in *Cho* as compared to University's IT-07 here further distinguishes the instant matter.  The *Cho* court found that while the plaintiff was on notice of DePaul's policy, the policy did not indicate DePaul would review or monitor plaintiff's email, which permitted plaintiff to maintain a reasonable expectation of privacy.  The court noted:

> [DePaul's] policies state that 'Limited personal use of Computing Resources by students, staff, and faculty is permissible if it does not violate this Policy or other University policies, or otherwise interfere with the legitimate education and business purposes of DePaul,' . . . . DePaul's policies state that it **'does not routinely monitor individual usage of its Computing Resources**,' though it reserves the right to do so. And notices that appear upon log-in state that any access or monitoring would take place only in accordance with applicable laws and legitimate business purposes . . . . Third, DePaul did have access to the e-mail account, but 'only in accordance with applicable laws, for legitimate business purposes,' including system monitoring and maintenance, complying with legal

requirements, and administering university policies . . . .

*Cho* at *2 (emphasis added).

To compare, in this case, Indiana University's IT-07 policy provides, in relevant part:

> . . . users should be aware that because IU is **a public institution**, and members of the University community are engaged in institutional and academic research projects that may require access to certain de-identified user data, and because the university must be able to ensure the integrity and continuity of its operations, *use of the university's information resources cannot be completely private*. For example, in addition to the types of permissible access described above, when users engage in incidental personal use of their university email accounts, *the contents of their email may be subject to disclosure* in response to requests under Indiana's "open records" law. . .

(emphasis added).

The email use policy in *Bridges* is analogous to the policy in this case. The policy in *Bridges* provided:

> All e-mail sent from or received are considered City property. City and departmental management reserve the **right to examine, at any time and without prior notice**, all e-mail. **Users should not assume any privacy or confidentiality for messages they transmit or receive** via the City's e mail system. Users should never send confidential or sensitive information via unencrypted e-mail.

and,

> [y]ou are acknowledging that you have **no reasonable expectation of privacy** regarding your use of this system.

*Bridges* at *1-2 (emphasis added).

Indiana University's IT-07 policy also explicitly notifies employees that they should have no expectation of privacy. The Policy provides in relevant part:

> . . . **use of the university's information resources cannot be completely private . . .** [t]herefore, **users of Indiana University information technology resources are hereby**

-8-

> **notified that they should have no expectation of privacy in connection with the use of those resources beyond the provisions of this policy.** Users should also be aware that although the university takes reasonable measures to ensure the privacy of university information technology resources, **the university does not guarantee privacy.**

(emphasis added).

Because of the policy in *Bridges*, the plaintiff could not "reasonably claim that she had an expectation of confidentiality when she e-mailed her attorney via her work account." *Bridges* at *4. The same is true here. Unlike the private institution in *Cho*, Indiana University is a public institution subject to an open records law and has an IT policy providing notice to its employees (including Lalwani) that they should have no expectation of privacy in Emails stored on the University's servers. Lalwani communicated about his highly personal matters via his employer's email system on his own volition and to his own peril.

Moreover, Lalwani's failure to provide a privilege log until April 30, 2026, undermines his assertion of privilege. (Dkt. 120 at 4). Lalwani provided the privilege log a month after Defendants notified him of the subject Emails.

As discussed in *Jones v. Hamilton Cnty. Sheriff's Dep't*, Federal Rule of Civil Procedure 26(b)(5) requires a discovery opponent to produce a privilege log when he believes responsive documents are subject to a privilege:

> [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

No. IP02-0808-C-H/K, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003).

Lalwani's after-the-fact production of a privilege log is too little, too late. If Lalwani intended to protect the Emails, he should have logged them on a privilege log when responding to written discovery requests to properly preserve the

-9-

opportunity to argue privilege.  He did not do so.  Rather than recognizing that he had used his University email account to communicate about legal matters in the past and taking precautionary steps to address that with assistance from his lawyer, Lalwani waited until after he received notice of the Emails from the University Defendants.  (Dkt. 120 at 4; Dkt 118-1 at 1).  Then, he cried foul, lodged a litany of objections and accusations against defense counsel, and demanded sanctions.  Indeed, "'[i]f the client cares so little for the confidentiality of the communications as to fail to take steps to insure against unintended disclosures, it is hard to justify requiring the court to take elaborate measures to protect the client against the results of his own carelessness.'" *Goldstein*, 873 F. Supp. 2d at 935 (quoting Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5507, 578 (West Publishing Co. 1986)).

Here, Lalwani seeks Court intervention to protect Emails that he himself took no efforts to protect.  He chose not to identify them or to timely assert a privilege to shield them via a privilege log.  Moreover, throughout the discovery process in this case Lalwani has demanded overbroad and extensive searching of other custodian email accounts; therefore, he cannot claim surprise that his own email account would also be subject to scrutiny.  Having determined Lalwani had no reasonably justified expectation of privacy in communications produced and transmitted through his University email account, and additionally, that he waived the opportunity to assert attorney-client privilege by failing to identify the Emails timely, the Court declines to deem the Emails protectable.

### B. ADDITIONAL REQUESTS

Lalwani also requests an Order requiring the University Defendants to "immediately return and destroy every document they retrieved from Dr. Lalwani's IU custodian account" and requiring the University Defendants' access to all of his communications to "proceed through formal Rule 34 process."  (Dkt. 118 at 5).  Further, Lalwani seeks an Order requiring the University Defendants to "provide a sworn declaration disclosing all search terms used, all individuals who reviewed the

documents, and all ways derived information has influenced litigation strategy." (*Id.*).  Essentially, Lalwani argues he is entitled to under oath testimony on all defensive and strategic efforts of the University Defendants.

As discussed *supra*, the Emails are not protected under the Court's Quick Peek Order, the Court's March 4 Order, the work product doctrine, or the attorney-client privilege.  Therefore, the University Defendants are not required to return or destroy documents retrieved from Lalwani's email account, nor are the Defendants required to proceed through the an inspection process.

Moreover, Lalwani's request for a sworn declaration "disclosing all search terms used, all individuals who reviewed the documents, and all ways derived information has influenced litigation strategy" is nothing more than a request for "discovery on discovery" and an accounting of the University Defendants' own work product.  (Dkt. 118 at 5).  As an initial matter, the University Defendants already provided Lalwani with the search terms used in its February 11, 2026 *Report*.  (Dkt. 70 at 5).

More importantly, Lalwani is not entitled to know the University Defendants' litigation strategy, mental impressions, or investigative efforts.  In *LKQ Corp. v. Kia Motors Am., Inc.*, the court explained that discovery on discovery "should be rare and certainly the exception, not the norm."  345 F.R.D. 152, 156 (N.D. Ill. 2023).  The court noted, "[a]s a general rule, attorneys do not second-guess each other's processes for producing responsive information . . . generally they do not need a deep dive into the collection, review, and processing methodology of their opponent."  *Id.*  The court cautioned, "[i]f second-guessing was the norm, the whole discovery system would break down into an endless barrage of motions based on mistrust about the opponent's production."  *Id.*

Lalwani's request for a sworn declaration is, therefore, **DENIED.**

Finally, Lalwani also seeks sanctions under Federal Rule of Civil Procedure 37(b)(2).  (*Id.*).  Under Rule 37, "'sanctions may be appropriate in any one of three instances—where the noncomplying party acted either with willfulness, bad faith[,] or fault.'"  *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).

Lalwani fails to demonstrate that the University Defendants' conduct regarding the Emails constitutes a violation of any court order, or rule, or bad faith, such that Rule 37 sanctions are appropriate. In fact, as discussed herein, the University Defendants' position has been sustained; the University Defendants handled the contested Emails in a manner consistent with their obligations and the Rules. Accordingly, Lalwani's request for sanctions is **DENIED.**

### IV.    CONCLUSION AND ADMONISHMENT

This Court's March 4 Order cautioned the Parties that "communication efforts between the Parties must be improved going forward." (Dkt. 83 at 20). The instant Discovery Dispute — and the time and resources devoted to addressing three (3) Emails — indicates that the Parties continue to struggle with productive communication. Requiring assistance and court intervention each time an issue arises should not be the norm, nor should accusations of bad faith be lodged at every turn. More troubling, personal attacks and threats to coerce agreement have been lobbed against the University Defendants and their counsel.[2]

To be clear: threats to report counsel to the Indiana Supreme Court Disciplinary Commission and/or to pursue efforts to punish by state court proceedings have not been supported by the record, are not well-taken, and should immediately cease. Indeed, such threats may well violate the Rules of Professional Responsibility. Further caution will not be afforded; any such future conduct will be subject to sanctions.

To summarize:

---

[2] Communication by counsel dated April 8, 2026 at 5:05 p.m. demanded "full compliance and agreement" on all of Plaintiff's demands by April 10, 2026, and advised that if such full compliance and agreement was not received, Plaintiff would "pursue all available remedies without further notice, including but not limited to: a motion for a protective order and civil contempt before this Court; a motion for sanctions under FRCP 26(g)(3); FRCP 37(b)(2); and 28 U.S.C. § 1927 against Defendants and their counsel personally; referral to the Monroe County Circuit Court for contempt proceedings under Indiana Code § 35-38-9-10(f) for disciplinary use of records related to an expunged arrest; a motion to disqualify [Defendants' counsel's firm]; and referral of [defense counsel's] conduct to the Indiana Supreme Court Disciplinary Commission."

1. Lalwani's request for an Order deeming the Emails protected communications is **DENIED.**  The Emails are not protected under the Court's Quick Peek Order, the Court's March 4 Order, the work product doctrine, or the attorney-client privilege.

2. Lalwani's request for an Order requiring the University Defendants to immediately return and destroy every document they retrieved from Dr. Lalwani's IU custodian account is **DENIED.**

3. Lalwani's request for an Order requiring the University Defendants' access to all of his communications to proceed through formal Rule 34 process is **DENIED.**

4. Lalwani's request for an Order requiring the University Defendants to provide a sworn declaration disclosing all search terms used, all individuals who reviewed the documents, and all ways derived information has influenced litigation strategy is **DENIED.**

5. Lalwani's request for sanctions under Federal Rule of Civil Procedure 37(b)(2) is **DENIED.**

6. The University Defendants' request for an Order finding that they are entitled to review and use non-privileged, contested communications and attachments is **GRANTED** because the Emails at issue are not protected by any privilege.

**SO ORDERED.**

**Date:** June 26, 2026

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

Distributed electronically via ECF to counsel of record.